## COWARD et al. v. WILLIAMS et al.
### (No. 7984.)

Court of Civil Appeals of Texas. San Antonio. March 14, 1928.

**1. Pleading ⬤═248(17)—Refusal to permit trial amendment challenging entire vote of precinct held not abuse of discretion, where original petition attacked rejection of some votes and acceptance of others.**

Where it was admitted in original petition that returns from different voting boxes were duly canvassed, sole ground of attack being rejection of some votes and acceptance of others, refusal to permit filing of trial amendment challenging entire vote of certain precinct because there were no tally sheets, voting lists, and returns in voting box of that precinct *held* not abuse of discretion.

**2. Pleading ⬤═236(3)—Permission to file trial amendments is within reasonable discretion of district judge.**

Permission to file trial amendments is within reasonable discretion of district judge.

**3. Highways ⬤═90—That tally sheets, voting lists, and returns were not in voting box of precinct would not invalidate election.**

In contest of election for issuance of bonds for road purposes, that tally sheets, voting lists, or returns were not in voting boxes from certain precinct would not invalidate the election, since it was but an irregularity.

**4. Appeal and error ⬤═743(1)—Assignment referring to "bill of exeption No. 3" without indicating page of transcript presented nothing for review.**

Where Court of Civil Appeals was referred by assignment of error to "bill of exception No. 3" without indication of page in either of two transcripts filed, and diligent search failed to disclose bill, *held* assignment presented nothing tangible for review.

**5. Highways ⬤═90—Vote of one born in Mexico who had only procured first naturalization papers held properly rejected (Rev. St. 1925, art. 2955; Act Cong. June 29, 1906, § 4, as amended [U. S. Comp. St. § 4352]).**

In contest of election for issuance of bonds for road purposes, vote of one born in Mexico, who took out first naturalization papers 36 years previous to casting contested vote and who never proceeded any further with naturalization, *held* unlawful and properly rejected, under Rev. St. 1925, art. 2955, requiring voter to be citizen of United States, since by terms of Act Cong. June 29, 1906, § 4, as amended by Act June 25, 1910, § 3, and by Act May 9, 1918, §§ 1–3 (U. S. Comp. St. § 4352), foreigner becomes citizen when he obtains final papers.

**6. Highways ⬤═90—In contest of election for bonds for road purposes, vote of one living outside district held properly rejected.**

In contest of election for issuance of bonds for road purposes, vote of one living outside bounds of road district *held* properly rejected, voter being unqualified.

**7. Elections ⬤═228—Statute prohibiting conveyance of voters to voting place in vehicles held not to prohibit one from permitting friends to ride with him to polls (Rev. St. 1925, art. 3025).**

Rev. St. 1925, art. 3025, prohibiting conveying of voters to voting place in vehicles, *held* not to contemplate that one might not permit friends and neighbors to ride with him to polls.

Appeal from District Court, Atascosa County; O. W. Murray, Jr., Judge.

Suit by I. A. Coward and others against L. Morgan Williams and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

R. R. Smith, of Jourdanton, for appellants. Earl D. Scott, of Jourdanton, for appellees.

FLY, C. J. I. A. Coward, Ben Booth, Allen Hime, Ambrose Akers, and Steve Nixon, claiming to be property owners and taxpay-

ers in road district No. 2, of Atascosa county, filed a contest of an election for the issuance of bonds in the sum of $250,000 for road purposes, against L. Morgan Williams, the county attorney of Atascosa county. The court heard the evidence and rendered judgment sustaining the validity of the election.

It was alleged by the contestants that road district No. 2, lies in Atascosa county, and was duly established by the commissioners' court of that county, that an election was duly and legally held on May 14, 1927, under orders of said commissioners' court, in voting boxes at Charlotte, in voting precinct No. 18; at Crown, in voting precinct No. 9; at Tobey, in voting precinct No. 11; at Hindes, in voting precinct No. 23—for the purpose of determining whether bonds should be issued in the sum of $250,000, bearing interest at 5½ per cent. per annum, payable in 30 years, for the purpose of constructing public roads in the precinct, and to determine the levy of taxes to pay interest on bonds and provide a sinking fund for redemption of the bonds at maturity. It was alleged that the election was held and the returns canvassed by the commissioners' court, and it was declared that the election was lawfully held, 369 votes being cast, of which number 245 votes were cast for the issuance of the bonds and 121 against the issuance of the bonds. It was declared that issuance of the bonds had been authorized by two-thirds of the votes cast.

Appellants thus state their grounds for the contest:

"(1) That illegal votes, named specifically, were cast in favor of said proposition, which, if eliminated, would reverse the result declared by the commissioners' court.

"(2) That irregularities, in the matter of the use of the Spanish language in assisting voters, electioneering within the polls by the officers thereof for the proposition, the hauling of voters to the polls, the denial of the ballot to lawful voters, marked the election to such an extent as to make the results so uncertain as to require the ordering of a new election and the vacating of the returns canvassed.

"(3) That voters who were lawfully entitled to vote were denied the right, on application at the polls in due time, form, and season, and who would have voted against said bonds, as would change the result of said election."

The court in his judgment found that 11 votes were cast, by voters named, at the election for the issuance of the bonds, which were unlawfully cast in favor of the bond issue and they were eliminated and subtracted from the 248 votes canvassed by the commissioners, leaving 237 legal votes for the bonds. The court found that five illegal votes were cast against the issuance of the bonds and they were deducted from the 121 votes counted against the issuance of the bonds, leaving 116 legal votes cast against such issuance, still leaving two-thirds of the votes in favor of the bonds.

The court found also that no other votes of those challenged should have been rejected. The costs were assessed against contestants, S. Nixon, who had withdrawn as a contestant, being made to pay his part of the costs.

[1-3] The first assignment of error complains of the action of the court in refusing to permit appellants to file a trial amendment challenging the entire vote of the Hindes precinct because there were no tally sheets, voting lists, and returns in the voting box of that precinct. Permission to file trial amendments is within the reasonable discretion of the district judge, and we perceive no abuse of that discretion in this case. It was never contemplated that a plaintiff during the course of a trial might set up a new ground for his action through a trial amendment. It was admitted in the original petition that the returns from the different voting boxes were duly canvassed, no attack being made upon any of the returns, and it was not claimed that there had been any error or irregularity in the manner of conducting the election or making the returns; the sole ground of attack being the rejection of some votes and the acceptance of others. If the evidence had conclusively shown, as it did not, that tally sheets, voting lists, or returns were not in the voting boxes from Hindes precinct, it was a mere irregularity that would not have invalidated the election and deprived the people of their votes. In the case of Lipscomb v. Perry, 100 Tex. 122, 96 S. W. 1069, it was said in a contested election case in regard to a trial amendment:

"We are therefore clearly of the opinion that it was competent for the trial judge, in passing upon the exception, to apply the well-settled rule which gave to him the discretion to allow or disallow the introduction of new issues as the time and circumstances might, in his judgment, make proper."

The court further said:

"Before the adoption of the rule as to trial amendments it had often been held that there is a limit to the right of amendment, and that a time must come in the progress of a cause when the court may properly refuse to allow its further exercise. * * * At such time the refusal or allowance of an amendment becomes discretionary with the court and the party attacking the exercise of that discretion must show that it has been abused to his injury."

There is no suggestion that any fraud had been perpetrated in the voting precinct of Hindes.

[4] The third assignment of error is overruled. The record fails to indicate any effort upon the part of the appellants to have the costs retaxed, or to raise the question in any manner. This court is referred, in the assignment of error, to "bill of exception No. 3," without indicating the page of either of two transcripts filed herein where it can be found and a diligent search of the transcripts fails to disclose it. The assignment of error pre-

sents nothing tangible to this court. Appellant says that the bill of exceptions "was lost somewhere between Jourdanton and Pearsall in the shuttlecock journeys which the court below and contestee's counsel imposed on contestants' counsel," but insists that the error is apparent of record. We fail to discover it.

[5] The seventh assignment of error assails the action of the court "in finding that the vote of P. Sanchez at the Crown voting box was unlawfully cast against said bond issue." No assistance is given the court by any reference to the pages of the statement of facts where the evidence of Sanchez appears, but the statement of facts discloses that Sanchez did not vote at the Crown voting box, but at Amphion. It appears from the facts that the name of the party who voted at Amphion was Prajades Santos, and not Sanchez. He was born in Mexico, and took out his first naturalization papers 36 years ago and never proceeded any farther, and did not have final papers. Under article 2955, Rev. Stats. 1925, among other qualifications of a voter, he must be a citizen of the United States, and by the terms of section 3750, Barnes' Fed. Code (U. S. Comp. St. § 4352), a foreigner becomes a citizen when he obtains his final papers. The second section of the paragraph cited requires the alien, in not less than 2 years nor more than 7 years after declaration of intention, to apply for final papers. Santos had never applied for final papers. The evidence was quite unsatisfactory even as to first papers having been obtained. Of course, repeated voting did not make him a citizen. Santos could not identify the officer before whom he filed his declaration over 30 years ago. No Sanchez appears among the list of voters as claimed by appellants. The assignment is overruled.

[6] The eighth assignment of error complains of the rejection by the court of the vote of L. F. Lozano. His evidence showed that he and his family had for 3 years lived on a farm outside the bounds of road district No. 2, and consequently he was not a qualified voter in the district. It was shown by the evidence of B. B. Freeborough, a civil engineer, that the 100 acres on which Lozano and family lived, and where he intends to make his permanent home, "is on the north side of the Atascosa creek, outside of road district No. 2." Lozano had rented his farm inside the district, from which he moved on account of a drouth.

Neither the assignment of error nor the statement shows any reason for attack on the action of the court in counting the vote of Mrs. Gussie Semple. She was a resident of the precinct for over 6 months before she voted, and it is not claimed that she did not have an exemption certificate on account of age. Assignment No. 9 is overruled.

The tenth assignment assigns error in counting the votes of Mrs. Marciana Morales, Isidro Bustamente, and Savas Longorio. After discussing the matter to some extent, appellants conclude "that it is not clear how any of these Mexicans voted, except Mrs. Marciana Morales," and that it is of no importance as to the votes except as offering a reason "to throw out and refuse to consider the vote cast at the Charlotte voting box." The evidence does not show that any officer of the election explained in Spanish or any other language as to how she should vote. She said she voted as her husband did, probably for the bonds. The assignment is overruled.

[7] The twelfth assignment is overruled. There were no reasons presented that would have justified the court in rejecting the whole vote at Charlotte. The evidence was conflicting as to aid given voters through the use of the Spanish language, and the evidence failed to show that vehicles were used to convey voters to the voting place, within the spirit of article 3025. That law was enacted to prevent vehicles being used by candidates or other interested parties to convey voters to the polls. The custom had reached the stage before the law was passed that, in every town and village, vehicles were sent out in every direction to gather up prospective voters and convey them to the polls. It had become a species of petty bribery, and the law was passed to repress and destroy the practice. It was never contemplated that a man might not permit his friends and neighbors to ride with him to the polls. If the statute is literally construed, a man could not take his wife, sons, and daughters with him in his automobile to the polls. The voters of a voting box cannot be deprived of their ballots upon such uncertain testimony as was offered in regard to Charlotte.

The judgment is affirmed.