

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

### NO. 2-08-228-CR

---

DELORES RAMON VELASQUEZ                                    APPELLANT
A/K/A RAMON VELASQUEZ

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

Appellant Delores Ramon Velasquez a/k/a Ramon Velasquez pleaded guilty

to burglary of a habitation with intent to commit a felony, and the trial court

sentenced him to fifty years' confinement.  In one point, Velasquez argues that

the trial court improperly considered his immigration status and the future

danger that he might pose to women in Mexico when it assessed his sentence

---

[1] *See* Tex. R. App. P. 47.4.

and, as a result, violated the Supremacy Clause of the United States Constitution and the separation of powers doctrine under the Texas constitution. We affirm.

## II. Factual and Procedural Background

On May 1, 2007, Velasquez, intoxicated and under the influence of alcohol and cocaine, forced his way into Emma Velasquez's home and stabbed her multiple times with a knife.[2] Emma sustained numerous puncture wounds to her left arm, upper left side, left chest, and left abdomen. The police arrested Velasquez at the scene, and the State charged him with burglary of a habitation with intent to commit a felony.

On February 11, 2008, Velasquez entered an open plea of guilty. The trial court accepted his plea but withheld sentencing and ordered that a pre-sentence investigation (PSI) be conducted. On May 15, 2008, the Tarrant County Community Supervision and Corrections Department completed the PSI and provided the trial court with a report. The report contained a detailed description of the assault and documented Velasquez's history of controlled substance and alcohol abuse and his need for anger management counseling. The report also included Velasquez's immigration status. Specifically, the

---

[2] Velasquez and Emma began having a "physical relationship" after her husband—Velasquez's brother—went to prison.

2

report stated that Velasquez, a Mexican citizen, is an illegal alien due to an expired work visa.

During the sentencing hearing, the trial court had before it photos of Emma's injuries, the 911 tapes, and the PSI report. At the close of arguments, and after a detailed discussion by the trial court as to its reasoning, the trial court sentenced Velasquez to fifty years' confinement. This appeal followed.

### III. Discussion

In his sole point, Velasquez argues that the trial court violated the Supremacy Clause and the separation of powers doctrine when assessing his sentence by improperly considering Velasquez's immigration status and the future danger that he might pose to women in Mexico. Specifically, Velasquez directs our attention to the trial court's following comments:

> He's [referring to defense counsel] concerned about the punishment you will receive as a matter of federal law and [the] reality that whenever you're released from prison that you'll be deported because of the felony conviction, because according to the PSI any legal paperwork you had has expired, and the likelihood of someone convicted of burglary with an assault with a knife of getting legal papers, your lawyer is very smart and knows is very slim, even if immigration laws are reformed or liberalized.
>
> Unlike many young people who my heart breaks that come here when they're four and no one bothers to do the paperwork right, I see them get deported and they don't even speak English—I mean—they only speak English. I speak more Spanish than they do. And you at least are fluent and from that aspect would not be

3

a handicap even if you don't have close associations due to your lengthy residence in the United States.

And that is proper to argue as a de facto punishment that will happen, but for the same reason that your rights were protected, the PSI was thorough. If you wanted a trial, it would have been a fair trial regardless of your nationality or place of birth or citizenship status because that's the way things happen in a free country. I'm not taking away points for you because you weren't born in the United States for five generations, so I'm not going to give you points because of this collateral punishment, but I will recognize it's a reality.

But having said that, is it not proper to consider the safety of the women in Mexico if you were deported? Is it not proper to consider that if someone can sit and torture and stab someone with a running phone call and screaming and a crying child for four or five minutes and not stop when they're begged to, that the next time they feel betrayed are poked or punched or prodded that that woman lives in some rural area of Durango, there's not a 9-1-1 call to make to rush her to the hospital and save her life. She might bleed to death because she might be two hours away from the nearest hospital, with the existing transportation.

In response, the State argues that Velasquez did not object to the trial court's comments regarding his immigration status and the safety of Mexican women and therefore has forfeited this issue on appeal. We agree.

## A. Preservation of Error

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983

4

S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

The fact that Velasquez's argument rests upon constitutional grounds does not excuse him of the necessity of preserving error for appellate review. *See Stewart v. LaGrand*, 526 U.S. 115, 119, 119 S. Ct. 1018, 1020 (1999) (holding appellant waived constitutional complaint); *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (same); *Curry v. State*, 910 S.W.2d 490, 496 n. 2 (Tex. Crim. App. 1995) (stating that constitutional errors may be waived). Therefore, because there is nothing in the appellate record indicating that Velasquez objected to the trial court's comments about his immigration status or the safety of women in Mexico, or even to the sentence itself, we hold that Velasquez has failed to preserve any error for our review. *See* Tex. R. App. P. 33.1(a)(1).

Furthermore, even assuming Velasquez preserved this issue for appeal, the State argues that the doctrine of invited error estops Velasquez from asserting it on appeal. We agree.

5

## B. Invited Error

The doctrine of "invited error," as distinguished from a waiver of error, is a type of estoppel. *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1102 (2000). This doctrine estops a party from making an appellate error of an action that it induced. *Id*. As the Texas Court of Criminal Appeals has explained,

> Waiver might usefully be distinguished from what is sometimes called "invited error." If a party affirmatively seeks action by the trial court, that party cannot later contend that the action was error. This is not really a waiver of error previously committed. Rather, it is part of the definition of what can constitute error, and quite reasonably defines error of which a party may complain as excluding those actions of the trial court actually sought by the party in that tribunal.

*Id*.

The State points out that because Velasquez requested that the trial court take into consideration his likely deportation, he cannot now object to the consequences of that request. Specifically, the State directs our attention to the following comments made by Velasquez's counsel during closing arguments:

> He cannot apologize or express his being sorry enough. He would like the opportunity to do it to the injured party, although I've explained to him that it's probably not likely to happen. But, you know, he has expressed that through the [PSI report] and through family members. He doesn't know how — he wishes he could go back and undo what's been done. It's obviously impossible for him

6

to do, Your Honor. And obviously, we're lucky. . . . It could have been a significantly worse outcome. Both parties will move on with their lives. Obviously my client will have to deal with whatever sentence is imposed by the Court.

*After that, as you know, as the Court knows, he will be formally deported and he will have to begin, if he's given a chance at a new life or a different chapter in his life not in this country, not with his family and not in a place—and in a place that he hasn't probably seen since he was 12 or 13 years old, Your Honor.*

*We would request that you take all those matters into consideration.* [Emphasis added.]

The emphasized portions of the excerpted comments above make clear that Velasquez explicitly requested that the trial court consider his deportation when assessing his sentence. Therefore, because Velasquez actually requested that the trial court take into consideration his deportation, we hold that the doctrine of invited error estops him from now complaining about the trial court's actions, even if those actions resulted in constitutional error. *See Prystash*, 3 S.W.3d at 531; *Druery v. State*, 225 S.W.3d 491, 505–06 (Tex. Crim. App.), *cert. denied*, 128 S. Ct. 627 (2007); *Norton v. State*, 116 Tex. Crim. 48, 50, 31 S.W.2d 1087, 1088 (1930) (noting that "[a] litigant on appeal or writ of error may not seek a reversal for error which he himself has committed or invited, even though the error is fundamental"); *Franks v. State*, 90 S.W.3d 771, 781 (Tex. App.—Fort Worth 2002, no pet.). Accordingly, we overrule Velasquez's sole point.

7

## IV. Conclusion

Having overruled Velasquez's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 30, 2009