

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00346-CR

KINTE L. SARGENT                                                     APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

-----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

-----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Kinte L. Sargent appeals his conviction for possessing a controlled substance with intent to deliver, asserting that the trial court erred by denying his motion to suppress a recorded interview in which he admitted that drugs seized during a search were his. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts and Procedural History

Appellant was playing video games in a Fort Worth duplex with Cedric and Cory Finley when narcotics officers, executing a search warrant, entered through the front door. Appellant ran from the living room toward a bedroom before stopping in the hallway and lying down on the floor. He told officers securing the duplex as they walked by that any drugs they found belonged to him.

Once the duplex was secured, Officer Thomas Bulger led Appellant outside and placed a tape recorder between them on the hood of a pickup truck parked in the driveway. He turned the recorder on, read Appellant the *Miranda* warnings,[2] and recorded Appellant admitting that the drugs seized in the duplex were his.

Officers searching the kitchen found digital scales and a large, black plastic bag in a cupboard. The bag contained approximately one hundred grams of crack cocaine divided into smaller plastic bags.

The officers arrested Appellant, and he was charged with possession of four or more but less than two hundred grams of cocaine with intent to deliver. Before trial, he filed a motion to suppress his recorded statement, claiming that its admission would violate his rights under provisions of the state and federal constitutions and the code of criminal procedure. The trial court denied the motion to suppress after a hearing.

---

[2]*See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).

At trial, Officer Bulger testified that as soon as the officers entered the duplex, Appellant spontaneously admitted owning all the drugs. Appellant did not object to this testimony. Officer Bulger further testified that he subsequently recorded an interview with Appellant during which Appellant reiterated that all the drugs were his. The recording was admitted in evidence and published to the jury.[3] After the State rested, Cedric Finley testified for the defense that he did not hear Appellant claim that the drugs were his.

The jury found Appellant guilty and assessed his punishment at thirty-five years' confinement. The trial court sentenced him accordingly.

## Issues on Appeal

In six issues, Appellant claims that the trial court abused its discretion by admitting his recorded statement in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; article 1, section 9 of the Texas constitution; and articles 1.04, 38.22 and 38.23 of the Texas Code of Criminal Procedure. Appellant combines all six issues and argues that his recorded statement should have been suppressed because (1) the officer's warning was an improper statement of the law; and (2) Appellant did not

---

[3]Before trial, the driveway recording of the interview was copied to two compact discs, marked State's Exhibits 1 and 11. State's Exhibit 1 contained the original recording and two redacted versions that the prosecutor had prepared anticipating potential objections at trial. State's Exhibit 1 was admitted and published to the trial court at the pretrial hearing. State's Exhibit 11 contained only the original unredacted recording and was admitted at trial and published to the jury. Neither redacted version was used at trial.

expressly state that he understood his rights and that he voluntarily, knowingly, and intelligently waived them.

Initially, the State responds that we need not consider all of Appellant's issues because he did not argue them all at the pretrial hearing. Specifically, the State points out that Appellant did not argue to the trial court that admitting the statement would violate the Texas constitution, article 1.04 of the code of criminal procedure, and the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Thus, the State argues, Appellant has waived all but his claims under the Fifth Amendment and article 38.22 of the code of criminal procedure.

In support of this argument, the State relies on appellate rule 33.1(a) and two cases from the court of criminal appeals.[4] Neither of the cases cited by the State, however, involves a trial court's denial of a motion to suppress, as is the case here. Moreover, rule 33.1(a) states that as a prerequisite for presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection *or motion* that stated the grounds for the sought-after ruling with sufficient specificity to make the trial court aware of the complaint. Tex. R. App. P. 33.1(a)(1); *see Mosley v. State*, 983

---

[4]The State cites *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) for the proposition that error under the Sixth Amendment Confrontation Clause may be waived; and *Gallo v. State*, 239 S.W.3d 757, 758 (Tex. Crim. App. 2007) for its holding that the appellant's trial objection in that case did not comport with his argument on appeal and, therefore, that his complaint on appeal was not preserved.

S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999). The record shows that Appellant timely filed a motion to suppress, that the motion plainly invokes the provisions upon which he bases his appellate claims for relief, and that the trial court denied the motion. Initially, therefore, Appellant preserved all his claims for review. *See* Tex. R. App. P. 33.1(a)(1); *Mosley*, 983 S.W.2d at 265; *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

We say *initially* because, although Appellant cited state and federal constitutional provisions as grounds for relief in both his motion to suppress and in his brief, he does not distinguish his state and federal constitutional claims or provide substantive argument in support of each. Specifically, he does not argue how the Texas constitution affords more protection than its federal counterpart. Accordingly, of his constitutional claims, we consider only those relying on the United States Constitution and we disregard those based upon the Texas constitution. *See Welch v. State*, 93 S.W.3d 50, 52 n.5 (Tex. Crim. App. 2002); *Heitman v. State*, 815 S.W.2d 681, 690–91 n.23 (Tex. Crim. App. 1991). Appellant's second and fifth issues, therefore, are overruled. We now turn to the remaining ones.

**Standard of Review**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

5

In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the

trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings, that are supported by the record, are also dispositive of the legal ruling. *Id.* at 818.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

**The Statement**

We begin by examining the entire statement, which we have transcribed and reproduced below:

> OFFICER:  Hey, what's your last name, dude?
>
> APPELLANT:  S-A-R-G-E-N-T.
>
> OFFICER:  Hang on, what?
>
> APPELLANT:  S-A-R-G-E-N-T.
>
> OFFICER:  S-A-R-G-E-N-T?
>
> APPELLANT:  Uh-huh.
>
> OFFICER:  Your first name?
>
> APPELLANT:  K-I-N-T-E.
>
> OFFICER: K-I-N-T-E?  Middle?
>
> APPELLANT:  L.

7

OFFICER:  L?

APPELLANT:  Yes, sir.

OFFICER:  What's your birthday?

APPELLANT:  2-6-77.

OFFICER:  2-6-77.  You know what today's date is?

APPELLANT:  Unh-uh, but, let me tell you [inaudible], cut that off so I can tell you something first, please.

OFFICER:  Cut off the recording?

APPELLANT:  So I can tell you something first.  That's going to [expletive deleted] me in the end.

OFFICER:  You know what today's date is?

APPELLANT:  No sir.

OFFICER:  Hey, is this the 30th?  30th?  All right.  I'm going to read you your warning.  Your adult warning.  These are your rights, OK?  You have the right to remain silent, not make any statement at all.  Any statement you make may be used against you at your trial.  Any statement you make may be used as evidence against you in court.  You have the right to have a lawyer present to advise you prior to and during any questioning.  If you are unable to employ a lawyer, you have the right to have a lawyer appointed to you to advise you prior to and during any questioning.  You have the right to terminate the interview at any time.  You understand that?  Do you have any questions about any of those?  OK.  Do you know who lives at this house?

APPELLANT:  Unh-uh.

OFFICER:  You don't know who lives here?

APPELLANT:  Oh, the lady lives here.

OFFICER:  Who is she?

8

APPELLANT:  Oh, you don't know [inaudible], you know what I'm saying [inaudible] please don't make me do that.  I'm, I already told you that it was mine.

OFFICER:  OK, the only statement I can use against you in court is a written statement or a recorded statement.  Like I told you, if you say that the drugs in this house are yours then you're going to have to claim that they're yours either recorded or written or I can't use it.

APPELLANT:  [inaudible] You not going to take anybody to jail?  Or are you just going to take me to jail?

OFFICER:  If I am convinced that everything in this house that's illegal that we are interested in belongs to you, then you are going to be the only person charged.

APPELLANT:  That's what I want to do.

OFFICER:  OK, do you know who lives in this house?

APPELLANT:  That girl right there, [inaudible], that girl right there, Rene lives in there.

OFFICER:  Rene.  Do you know who she is?  I mean is she related to you or a friend or what?

APPELLANT:  She's not a friend; she's not a lady friend.

OFFICER:  OK.  So, why are you over here?

APPELLANT:  I'm over here because my other cousin, one of my other cousins, the skinny dude, we, we been over here chillin.

OFFICER:  What's his name?

APPELLANT:  Cedric.

OFFICER:  Cedric.  OK.  So, you're hanging out with him. OK.  During the search warrant at this house we found around four ounces of crack cocaine.  Do you know anything about that?

APPELLANT:  It's mine.

9

OFFICER: That belongs to you?

APPELLANT: Yes, sir.

OFFICER: How did it get to this house?

APPELLANT: I, I put it off in there.

OFFICER: How did it get to this house?

APPELLANT: Oh, I put it off in there.

OFFICER: Did you drive it over here?

APPELLANT: [inaudible] I drive it over here. It's mine. I put it off in there. I didn't drive it over here but I put it off in there.

OFFICER: You understand what my job is?

APPELLANT: I'm not going to tell you all the shit that we put off in there.

OFFICER: OK. You understand what my job is?

APPELLANT: Yes, sir.

OFFICER: OK. My job is to find drug dealers and make the best case that I can against them. OK? From the information that I got about you, you're a person that sells cocaine and crack cocaine. That's why we're here tonight. OK. So, it's kind of weird that if we come over here, you're here, and you're car is here, and we find crack cocaine and you're wanting to take responsibility for it.

APPELLANT: It's weird?

OFFICER: Yeah, and now you're telling me somebody gave it to me.

APPELLANT: I'm, check, because the reason why is because nobody in the house except me knew anything about it.

OFFICER: OK. Why was it here?

10

APPELLANT: [Sigh], [inaudible] any more questions that that's not even, that's not has nothing to do with why it's here is having to do with its mine and you know what I did with it.

OFFICER: OK. So it's here for somebody to sell. And you're saying . . . .

APPELLANT: No, not out of this house. It's being hibernated like.

OFFICER: I gotcha.

APPELLANT: I hid it off in there.

OFFICER: I gotcha. OK. So it's just here stashed.

APPELLANT: I hid it off in there.

OFFICER: Gotcha. Do you know what it's packaged in?

APPELLANT: Yeah, off in a black bag. God!

OFFICER: So, all you're telling me is that you brought it over here to hide to keep for a later time. Is that pretty much it?

APPELLANT: I was going to smoke it.

OFFICER: Four ounces?

APPELLANT: Hell, yeah, [laughs] I smoke the shi–

OFFICER: All right. All right, dude, [inaudible], you deal drugs. You know that you deal drugs. That story's wrong. Don't try to side-step it.

APPELLANT: I ain't going to tell you that I deal drugs, officer.

OFFICER: I thought you said you wanted to be honest with me.

APPELLANT: I'm being honest with you.

OFFICER: OK. Then do it.

APPELLANT:  But I'm saying you told me that anything I say going to be held and accounted against me . . . .

OFFICER:  Yes.

APPELLANT:  I done told you it was mine.  I ain't going, um, I ain't going to, um, uh, whatever you call it . . .

OFFICER:  Incriminate yourself?

APPELLANT:  . . . any more than what I've already did.

OFFICER:  Well, you, you're kind of at a crossroads here because you're saying this stuff belongs to me and nobody else in this house.  But that's all you want to say.  You don't want to talk about anything else.  That puts me in a bad situation.  I'm trying to bring this case to the conclusion.

APPELLANT:  Come on man, you know that I told you it's mine and nobody else knew.  That's how I want to tell you.  Nobody else knew it was in there except me.  And that's it, it was mine, it belonged to me, Kinte Sargent.

OFFICER:  Perfect.  Is there anything else in this house illegal that belongs to you that they found or gonna?  Nothing at all?

APPELLANT:  Nothing else.

OFFICER:  OK.  Anything else you want to talk to me about? No.

## Discussion

In his first and third issues, Appellant contends that the trial court erred by admitting the recording because it contains no expression from Appellant that he understood his rights after Officer Bulger read them to him.  He asserts that Officer Bulger never asked him if he understood what his rights were.  The recording disproves this assertion.

12

Appellant is correct, though, that the record shows that no express waiver of his rights appears on the recording. But the law does not require that the recording reflect an express waiver of rights. *Rocha v. State*, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Etheridge v. State*, 903 S.W.2d 1, 16 (Tex. Crim. App. 1994), *cert. denied*, 516 U.S. 920, 116 S. Ct. 314 (1995). And in *Berghuis v. Thompkins*, the United States Supreme Court recently affirmed that waivers need not be expressly stated but can be implied from all the circumstances. 130 S. Ct. 2250, 2261 (2010). The State must prove, however, that the accused did, in fact, knowingly and voluntarily waive his rights; that is, it must prove that the waiver was made with the full understanding of the right being abandoned and of the consequences of that abandonment with the further burden of proving that the decision was made freely and deliberately without coercion or deception. *Id*. at 2261–62.

On the recording in this case, Officer Bulger read Appellant his rights, asked him if he understood them, and asked him if he had any questions about any of them. Thereafter, Appellant kept talking. Moreover, as the exchange below demonstrates, Appellant expressed a clear and fairly sophisticated understanding of his rights and a willingness to freely incriminate himself—up to a point.

> APPELLANT: I ain't going to tell you that I deal drugs, officer.
>
> OFFICER: I thought you said you wanted to be honest with me.

13

APPELLANT:  I'm being honest with you.

OFFICER:  OK.  Then do it.

APPELLANT:  But I'm saying *you told me that anything I say going to be held and accounted against me . . . .*

OFFICER:  Yes.

APPELLANT:  *I done told you it was mine.  I ain't going*, um, *I ain't going to*, um, uh, whatever you call it . . .

OFFICER:  *Incriminate yourself?*

APPELLANT:  *. . . any more than what I've already did*.

Finally, Appellant demonstrated that he understood that what he told the officer could result in his incarceration:

APPELLANT:  [inaudible]  You not going to take anybody to jail?  Or are you just going to take me to jail?

OFFICER: If I am convinced that everything in this house that's illegal that we are interested in belongs to you, then you are going to be the only person charged.

APPELLANT:  *That's what I want to do*.

Contrary to Appellant's assertion on appeal, our review of the recording shows that Appellant expressed sufficient understanding of his rights to control how much he would incriminate himself, that is, he was willing to go up to a point and no further: admitting that he *possessed* drugs, but denying intent to *distribute* them.  We hold, therefore, that the recording contains Appellant's expressed understanding of his rights.  Further, Appellant has not argued nor is there

14

evidence that he was coerced or intimidated into making the statements he made. Accordingly, we overrule Appellant's first and third issues.

In his fourth and sixth issues, Appellant contends that the trial court erred by admitting the recording because the warning the officer gave him was improper.

Article 38.22 requires the following warning be given an accused before a recorded statement may be used against him:

> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

> (2) any statement he makes may be used as evidence against him in court;

> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;

> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

> (5) he has the right to terminate the interview at any time.

Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2(a), 3(a)(2) (Vernon 2005).

As the transcribed recording reveals, Officer Bulger recited the above warning, practically verbatim. During the course of the conversation and in response to Appellant's apparent concern over implicating someone who lived in the duplex and his desire to take sole responsibility for the drugs that were seized, the officer explained, "The only statement I can use against you in court is a written statement or a recorded statement. Like I told you, if you say that the drugs in

15

this house are yours then you're going to have to claim they're yours either recorded or written or I can't use it."

Appellant characterizes the officer's warning as "contradictory and improper: Any statement you make may be used against you and no statement you make may be used against you unless it's written or recorded." This is a mischaracterization.

First, we note that on the recording Appellant admitted owning the drugs even before the officer gave what Appellant characterizes as the contradictory part of the warning. Moreover, the record shows that while Appellant may have balked at having what he said recorded and been unwilling to incriminate anyone else, he was anxious to talk and take sole responsibility for the drugs found in the duplex. Officer Bulger testified at trial,

> The whole time -- as soon as we made entry he was saying, "[E]verything is mine, everything is mine; nobody knew anything but me. Anything you find is mine. There is drugs here," and just on and on and on. It was hard to get him to be quiet.

Further, the recording indicates that the reason Appellant was so eager to talk was to ensure that no one else would be held responsible for the drugs.[5] After the officer assured him that he would be the only person charged if he convinced the officer, through a written or recorded statement, that everything

---

[5]Appellant told the officer, "Nobody in the house except me knew anything about it."

16

illegal in the house belonged to him, Appellant responded, "That's what I want to do."

We hold that Officer Bulger's telling Appellant that he could not use a statement from Appellant unless it was written or recorded was not given as part of the required warning. Appellant's appropriate questions and responses demonstrate that he understood his rights, including that the recording could be used against him and he actively took full responsibility for all illegal substances found in the search. *See Berghuis*, 130 S. Ct. at 2261.

We have reviewed the evidence in the light most favorable to the trial court's ruling and hold that the evidence supports the trial court's express finding that Appellant was properly warned and that he freely and voluntarily made the statements contained on the recording. Accordingly, we overrule Appellant's fourth and sixth issues.

## Conclusion

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

LEE GABRIEL
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 7, 2011

17