IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 21, 2024 Session

## STATE OF TENNESSEE v. ANTHONY CORNELIUS BAYLIS

**Appeal from the Circuit Court for Monroe County**
**No. 21284    Andrew Mark Freiberg, Judge**

_____

### No. E2023-00886-CCA-R3-CD

_____

Defendant, Anthony Cornelius Baylis, appeals his Monroe County Circuit Court jury conviction of trafficking a person for a commercial sex act, arguing that the trial court erred in denying his motion for judgment of acquittal; that the trial court erred in affirming his conviction as the thirteenth juror; that the trial court erred by denying his motion to dismiss the indictment for lack of the grand jury foreperson's signature attesting that witnesses were sworn; that the trial court erred by admitting certain testimony; that the State wrongfully commented on Defendant's election to not testify; and that the trial court erred by imposing a fully-incarcerative sentence. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, Jr., J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined. JAMES CURWOOD WITT, JR., not participating.[1]

Robert L. Jolley, Jr., Knoxville, Tennessee, for the appellant, Anthony Cornelius Baylis.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Matt Dunn and Sean Boers, Assistant District Attorneys General, for the appellee, State of Tennessee.

_____

[1] The Honorable James Curwood Witt, Jr., a former presiding judge who served on this court for twenty-seven years, passed away on August 17, 2024, during the pendency of this appeal. We thank him for his enduring commitment to this court and the rule of law.

# OPINION

## Factual and Procedural History

The Monroe County Grand Jury charged Defendant with one count of trafficking for a commercial sex act when the intended victim is a law enforcement officer 18 years of age or older posing as a minor. The indictment alleged that Defendant:

> on or about the 26th of May, 2021, in MONROE County, Tennessee, and before the finding of this indictment, did knowingly subject, attempt to subject, benefit from, or attempt to benefit from another person's provision of a commercial sex act, when said person was a law enforcement officer over the age of eighteen (18) posing as a minor, in violation of T.C.A. 39-13-309, all of which is against the peace and dignity of the State of Tennessee.

The indictment charged Defendant in the alternative with patronizing prostitution where the subject of the offense is a law enforcement officer 18 years of age or older posing as a minor. At the September 2022 trial, the State elected to proceed only on the trafficking charge.[2]

## Trial

Tennessee Bureau of Investigation ("TBI") Agent Patricia Kershaw, an intelligence analyst in the human trafficking unit, testified that she monitored "open-source" websites and known escort websites for potential victims. She explained that an open-source website is "open" to the general public and does not require login credentials. She also assisted in sting operations by posting advertisements and photographs that resemble an undercover agent to an escort or "paid for sex" website and researching any telephone numbers obtained through the advertisement.

Agent Kershaw testified that in May 2021, her TBI unit conducted a sting operation in Monroe County whereby she placed an advertisement on a "paid for sex" website called "Mega Personals." The advertisement described a twenty-two-year-old "[s]exy hottie with a whole lotta body" and read: "Hey fellas! Sexy curvy and all fun!! Satisfaction guaranteed look no further. . . . Funsize and available . . . HMU! 100% real no games very discreet. Call now!!! Available for Incalls only!!!" Agent Kershaw explained that she used terminology common in other such advertisements, that "HMU" means "hit me up," and

---

[2] Although an order is not included in the record, defense counsel noted at trial that the alternate charge was dismissed.

that "in-call" means that the buyer must come to the escort. The advertisement included a telephone number and stated that the escort was located in Sweetwater but was advertising in Knoxville. The advertisement included photographs of a woman "laying on the bed wearing bra and panties," but the photographs did not show the woman's face.

During cross-examination, Agent Kershaw testified that nothing in the advertisement explicitly referred to sex for money but said that "[t]he wording implies it." She did not know the age of the woman in the advertisement but said that the woman did not appear to be a minor. She said that Mega Personals prohibits photographs of minors and that the website has a disclaimer that the use of the site for sex trafficking of a minor is prohibited.

TBI Agent Clay Moore with the human trafficking unit testified that he assisted in the TBI's sting operation at the Quality Inn in Sweetwater on May 26 and 27, 2021. Agent Moore "set up" the cell phone and the undercover agent, Agent Meredith Simmons, used to respond to calls and text messages. He secured room 104 at the hotel for use by Agent Simmons and the adjacent room 103 for use by the case agents and analysts. He installed cameras in room 104 that recorded Agent Simmons's encounter with Defendant. After the operation, Agent Moore extracted all text messages and calls from the undercover cell phone, including text messages exchanged between Agent Simmons and Defendant.

During cross-examination, Agent Moore said that he watched Defendant's encounter with Agent Simmons via a television monitor. He saw Defendant enter the hotel room and sit on the bed. Agent Moore was able to hear some of the conversation through the door. He acknowledged that Defendant did not threaten Agent Simmons, had no weapon on him, and did not engage in any sexual act other than "pulling his pants down." Agent Moore saw Defendant give Agent Simmons money.

TBI Agent Meredith Simmons testified that she worked as the undercover agent in sting operations, conversing by cell phone calls or text messages with those who responded to the escort advertisement and meeting the target in the hotel room. She said that "the world of human trafficking" uses "a different language" to arrange transactions. She said she informs the target who responds to the online advertisement that she is sixteen years old despite the advertisement giving her age as twenty-two.

Agent Simmons began exchanging text messages with Defendant on May 26, 2021, at 5:01 p.m. When Defendant asked whether she was "available," Agent Simmons responded, "[Y]eah baby what you lookin for?" Defendant replied, "Hr," which Agent Simmons explained meant one hour. Agent Simmons sent a text message stating, "hr 120," which she said meant one hour was $120. Defendant and Agent Simmons discussed

locations through text messages, and Agent Simmons confirmed that Defendant was coming to meet her. At 7:00 p.m., Agent Simmons sent Defendant a text message stating, "[G]otta wear a condom bc im 16 and cant get pregnant." At 7:01 p.m., Defendant responded, "I can't do no underage love." Defendant continued to exchange text messages with Agent Simmons after she told him that she was sixteen years old. She told him to let her know if he changed his mind, and Defendant responded by asking if she could meet him at Weigel's. At 7:20 p.m., Defendant sent a text message asking whether Agent Simmons was from Sweetwater, and she responded that she was not. Six minutes later, Defendant sent a text message stating, "You need a sponsor." When Agent Simmons asked what he meant, the following text exchange occurred:

Defendant: "You not making s**t down there. You need to come to Knox if you want to get money"

Agent Simmons: "im making money here"

Defendant: "Real money love"

Agent Simmons: "how would I make more money there"

Defendant: "More available clients you're far from the money. You get in a bigger city you can charge like 250-300 an hour"

Agent Simmons: "well maybe ill cum there later"

Agent Simmons: "but im making some money here right now"

Defendant: "Yes but you're in a f***** up county"

. . . .

Defendant: "Where you from"

Agent Simmons: "i travel around"

Defendant: "What if I wanted you to stay around for a while"

Agent Simmons: "what"

Defendant: "Keep you around here"

Agent Simmons: "are you gonna help me or something?"

Defendant: "Duh"

Defendant: "It goes both ways"

Agent Simmons: "what would i do for you?"

Defendant: "Assist me with day to day operations if I need your help"

Agent Simmons testified that it was common for people to respond to an escort advertisement and attempt to recruit her, explaining, "They may not always use 'sponsor,' but there are people that reach out . . . asking about helping me with my work."

The text conversation continued, and Defendant said that he was "[p]ulling up at the Weigels" at 8:12 p.m. Agent Simmons told him to come to room 104 at the Quality Inn, where she met him and let him inside the room. The jury viewed a video recording of the encounter. Agent Simmons said that, when Defendant first met her, he said that she was "a young thing" and "needed to come to the city to make money." When Agent Simmons asked Defendant if he wanted to "do the hour," Defendant stood up, gave her money, began removing his pants, and grabbed a condom. Officers entered the room and arrested him shortly thereafter.

During cross-examination, Agent Simmons testified that she was twenty-six years old in May 2021. She said Defendant said to her, "You're only 16, that's funny. You're grown aren't you?" She acknowledged that Defendant never touched her and sat on a different bed than she did. She acknowledged that the information she gave Defendant in the text exchange was untrue and that, when he expressed concern about her being a minor, she told him not to worry about it. She acknowledged that she and Defendant did not discuss a specific sexual act and that they spoke only in the generalities of time and money. She said that, after Defendant gave her $120, she signaled for other officers to enter the room and arrest him.

TBI Agent Jamesena Walker testified that she had worked for the TBI for twenty-four years and on human trafficking cases for eleven years. She assisted with the TBI's study on human trafficking in 2011 and completed "numerous trainings" and conferences on the subject. She said had participated in approximately fifty sting operations and was familiar with the language used during commercial sex transactions and the methods used to recruit people into sex work.

Agent Walker said that on May 26, 2021, she worked "the operation room" during the sting operation, which included assisting the undercover agent with text messages received from different individuals, keeping notes, and conducting interviews following arrests. Agent Walker testified that Defendant's text message to Agent Simmons that "[y]ou need a sponsor" was "consistent language with an individual who is recruiting a female . . . [and] asking to become her trafficker or pimp." As to Defendant's text messages that read, "What if I wanted you to stay around for a while?" and "keep you around here," Agent Walker believed those messages were "another attempt at recruiting her into his business to keep her around to make money here in this area." She said Defendant's suggesting that Agent Simmons "[a]ssist [him] with day to day operations" was also language consistent with an attempt to recruit someone into sex work.

Agent Walker interviewed Defendant, and the interview was video-recorded and played at trial. During the interview, Defendant admitted that he gave Agent Simmons "some money." He said he saw an advertisement on Mega Personals and reached out to her; he admitted that she said she was sixteen years old; and he said he "wanted to come see her" to see what she looked like. He acknowledged paying Agent Simmons $120 but maintained he did not know what the undercover agent planned to do or whether they were going to have sex. He admitted that he was getting undressed to put on a condom when officers entered the room to arrest him. He maintained that he asked Agent Simmons if she wanted to help him with jobs because she said that she was homeless and needed money. He said he told her that she needed to come to Knoxville for more customers. He denied that he was going to "help" Agent Simmons and said he only planned to help her travel to Knoxville. Defendant denied that he wanted to add Agent Simmons to his "stable" and maintained that he wanted her to help him "secure jobs" for his HVAC and handyman work. He said that he wanted to see her in person to avoid being scammed and that he felt bad for her because she said she needed money, and he denied trying to recruit her to work as a prostitute for him.

At the close of the State's proof, Defendant sought a motion for judgment of acquittal, asserting that the State failed to establish a commercial sex act as defined by statute. The trial court denied Defendant's motion. The jury subsequently convicted Defendant of one count trafficking for a commercial sex act. Defendant renewed his motion for judgment of acquittal. The trial court took the matter under advisement and subsequently entered an order denying Defendant's motion and affirming the jury's verdict as thirteenth juror.

## Sentencing Hearing

At the sentencing hearing, Agent Moore testified that the TBI conducted human trafficking operations in an attempt to arrest individuals seeking "to purchase sex from underage victims." He said that, when the TBI placed an advertisement on an escort website, they typically received "probably anywhere between [300] and [500] calls or texts" in response. He said most of those who responded to the advertisement did not agree to a transaction or go to the hotel. Agent Moore noted that the video recording of Defendant's encounter at the hotel that was played for the jury was redacted. An unredacted recording of the recording was exhibited to Agent Moore's testimony. The State played only one-and-a-half minutes of the recording, but the minute marks are not documented in the record.

During cross-examination, Agent Moore acknowledged that the advertisement placed by the TBI in this case indicated that the person was twenty-two years old. He also acknowledged that no sex act occurred and that Defendant did not touch or threaten the undercover agent. Agent Moore testified that the unredacted portion of the recording indicated that Defendant had previously patronized prostitution and revealed "how much . . . he had paid."

The State exhibited to the hearing Defendant's presentence investigation report, which reflected pending charges of driving under the influence and simple possession of marijuana. The State also exhibited a March 2011 judgment in federal court reflecting that Defendant received three drug convictions and one firearm conviction as a result of conduct that occurred in 2008, for which Defendant was sentenced to 123 months of imprisonment followed by five years of supervised release. In December 2020, the federal court entered an order finding that Defendant had violated the terms of his supervised release and ordering him to serve three months in confinement. In January 2022, the federal court entered a second order finding that Defendant had violated the terms of his supervised release and ordering him to serve five months in confinement.

According to the presentence report, the thirty-nine-year-old Defendant had been employed for approximately two years at a company that performed HVAC tasks. Prior to his current employment, he completed two months of training to be a welder and assisting in carpentry work for approximately six months.

Defendant submitted a handwritten statement that was attached to his presentence report. He maintained that he went to the website not with the intention to solicit sex but to obtain a date to a party to which he had been invited. He denied that he agreed to "establish a business relationship or a sex act" with the undercover agent. He said, "I'm

-7-

guilty of letting my guard down and sympathizing with this person whom I felt was in a bad situation and I was wanting to help her in any way I could."

The trial court credited Agent Moore's testimony and found that, in the unredacted recording, Defendant "admitted to six other women, hiring them in exchange for sexual conduct at two hundred dollars" each. The court further found that Defendant had been convicted of multiple drug-related offenses in federal court and applied enhancement factor one, that "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1). The court also applied enhancement factor 13, that Defendant was on "some form of judicially ordered release" at the time he committed the present offense. *Id.* § 40-35-114(13)(F). The court did not apply any mitigating factors.

The court considered Defendant's written statement to the court, though "respectful" in tone, to be "an attempt at minimization" of the offense and "did not match the severity of criminal conduct before the court." The court concluded that Defendant's "lack of candor" in his statement weighed against a finding that he was amenable to correction. The court also found that Defendant lacked stable employment, "[m]aking money any way he can, kind of grifting from job to job."

In considering whether to grant Defendant a term of probation or split confinement, the trial court found that "measures less restrictive than confinement" had been unsuccessful and that Defendant had demonstrated a "failure at rehabilitation," noting that he had previously violated the terms of federal probation. The court imposed an eight-year sentence to be served in confinement. Following a timely but unsuccessful motion for a new trial, Defendant filed a timely notice of appeal.

**Analysis**

*I. Sufficiency of the Evidence*

Defendant asserts that the trial court erred in denying his motion for judgment of acquittal for his conviction of trafficking a person for a commercial sex act and that the evidence is insufficient to support the conviction. He maintains that the State failed to present evidence of a "commercial sex act" as defined by Tennessee Code Annotated section 39-13-301(4). The State responds that the evidence is sufficient to support the conviction.

Under Tennessee Rule of Criminal Procedure 29, a trial court "shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment,

or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." Tenn. R. Crim. P. 29(b). Whether to grant a motion for judgment of acquittal is a question of law, and the trial court must look at the State's evidence in the light most favorable to the State and must "allow all reasonable inferences from it in the State's favor; to discard all countervailing evidence, and if then, there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the evidence of the State," the trial court must deny the defendant's motion for judgment of acquittal. *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). In ruling on a motion for judgment of acquittal, the trial court looks at the legal sufficiency of the evidence and does not weigh the evidence. *Id.* "The standard by which the trial court determines a motion for a judgment of acquittal is, in essence, the same standard that applies on appeal in determining the sufficiency of the evidence after a conviction." *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013) (citing *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); *State v. Anderson*, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994)), *abrogated on other grounds by State v. Thomas*, 687 S.W.3d 223, 242-43 (Tenn. 2024). Because "[t]he standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction," we will resolve Defendant's challenge to the denial of the motion for judgment of acquittal and sufficiency of the evidence together. *State v. Thompson*, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000).

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving that the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

As applicable to the instant appeal, "[a] person commits the offense of trafficking a person for a commercial sex act who . . . [k]nowingly subjects, attempts to subject, benefits from, or attempts to benefit from another person's provision of a commercial sex act[,]" and "the intended victim of the offense is a law enforcement officer or a law enforcement officer eighteen (18) years of age or older posing as a minor." Tenn. Code Ann. § 39-13-309(a)(1), (3). The term "commercial sex act" is defined as:

(A) Any sexually explicit conduct for which anything of value is directly or indirectly given, promised to or received by any person, which conduct is induced or obtained by coercion or deception or which conduct is induced or obtained from a person under eighteen (18) years of age; or

(B) Any sexually explicit conduct that is performed or provided by any person, which conduct is induced or obtained by coercion or deception or which conduct is induced or obtained from a person under eighteen (18) years of age[.]

*Id.* § 39-13-301(4). Code section 39-13-309(d) provides that it is not a defense that "[t]he intended victim of the offense is a law enforcement officer" or that "[t]he solicitation was unsuccessful, the conduct solicited was not engaged in, or the law enforcement officer could not engage in the solicited offense." *Id.* § 39-13-309(d)(1), (3).

"Sexually explicit conduct" is defined at Tennessee Code Annotated section 39-13-301(14) to mean actual or simulated:
(A) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
(B) Bestiality;
(C) Masturbation;
(D) Lewd exhibition of the genitals or pubic area of any person;
(E) Flagellation or torture by or upon a person who is nude;
(F) Condition of being fettered, bound or otherwise physically restrained on the part of a person who is nude;
(G) Physical contact in an act of apparent sexual stimulation or gratification with any person's unclothed genitals, pubic area or buttocks or with a female's nude breasts;
(H) Defecation or urination for the purpose of sexual stimulation of the viewer; or
(I) Penetration of the vagina or rectum by any object except when done as part of a recognized medical procedure;

Defendant maintains that because the undercover agent was not under eighteen years of age, the State was required to establish that the sexually explicit conduct was "induced or obtained by coercion or deception" to qualify as a "commercial sex act" pursuant to Code section 39-13-301(4). Defendant asserts that because the State failed to present evidence of "coercion or deception," the evidence was insufficient to establish an element of the offense of trafficking a person for a commercial sex act. The State responds that it is not a defense that the undercover agent "could not engage in the solicited offense" and that coercion or deception is not required when a defendant "attempts to subject" or "attempts to benefit" from the victim's provision of a commercial sex act, believing the victim is a minor.

The most basic principle of statutory construction is "'to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). "Legislative intent is determined 'from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'" *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004) (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)). "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use." *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003) (citing *State v. Nelson*, 23 S.W.3d 270, 271 (Tenn. 2000)). "It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources." *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)). "Further, the language of a statute cannot be considered in a vacuum, but 'should be construed, if practicable, so that its component parts are consistent and reasonable.'" *In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009) (quoting *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968)). This court must also "presume that . . . the General Assembly 'did not intend an absurdity.'" *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010) (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)).

A "commercial sex act," as defined in Code section 39-13-301(4), requires that the "sexually explicit conduct" be "induced or obtained by coercion or deception," but "coercion or deception" is not required if the victim is under the age of eighteen. However, a person commits the offense of trafficking a person for a commercial sex act by not only knowingly subjecting or benefiting from another person's provision of a commercial sex act, but also by "attempt[ing] to subject" or "attempt[ing] to benefit" from another person's provision of a commercial sex act. Tenn. Code Ann. § 39-13-309(a)(1). When the statutory definition of a criminal offense includes the attempt to commit a certain act, "the

crime is committed if the attempt is made, regardless of whether it is successful and even regardless of whether the objective would be criminal apart from the attempt." *State v. Adams*, 238 S.W.3d 313, 327 (Tenn. Crim. App. 2005) (quoting *People v. Schmidt*, 352 N.Y.S.2d 399, 402 (N.Y. Crim. Ct. 1974)). As relevant to the instant case, criminal attempt occurs when a person "acting with the kind of culpability otherwise required for the offense," "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3); *see State v. Wheeler*, No. W2020-00030-CCA-R3-CD, 2021 WL 1423124, at *4 (Tenn. Crim. App. Apr. 15, 2021) (utilizing the definition of criminal attempt in Code section 39-12-101(a) when attempt is incorporated into the statutory definition of the criminal offense of solicitation of a minor).

The evidence presented at trial established that Defendant attempted to subject or benefit from sexually explicit conduct for money where the intended victim was an undercover law enforcement officer who Defendant believed was under the age of eighteen. Defendant contacted an undercover agent in response to an advertisement for sex on a website known as a "pa[y] for sex" or "escort" site. Believing the undercover agent to be a sixteen-year-old girl offering sex for money, Defendant suggested that she "come to Knox[ville]" to make more money and offered to "help" her, noting that the "help" would "go both ways" and that she would help him with "day to day operations." Agent Simmons noted that it was not unusual for those who responded to the advertisements to offer to help her with "her work," although they did not always use the term "sponsor." Agent Walker testified that Defendant's text messages were "consistent language with an individual who is recruiting a female" and "asking to become her trafficker or pimp." Although Defendant asserts coercion or deception was required to establish a commercial act because the intended victim was actually an undercover agent who was over the age of eighteen, Code section 39-13-309(d) specifically provides that it is not a defense that "[t]he intended victim of the offense is a law enforcement officer" or that "[t]he law enforcement officer could not engage in the solicited offense."

Defendant relies upon this court's opinion in *State v. Ward*, in which this court noted that, unlike the offense of promoting prostitution, the offense of trafficking a person for a commercial sex act "contains the additional requirement that the victim be coerced." *State v. Ward*, No. W2019-00345-CCA-R3-CD, 2020 WL 974193, at *7 (Tenn. Crim. App. Feb. 27, 2020). Unlike the intended victim in the instant case, the victim in *Ward* was an adult, and the evidence established that the defendant subjected the victim to and benefitted from the victim's provision of a commercial sex act rather than the attempt to do so. *Id.*

Defendant also argues that Agent Walker's testimony regarding her interpretation of the text messages was improperly admitted at trial and that, therefore, the testimony cannot be considered in determining the sufficiency of the evidence. However, our review of the sufficiency of the evidence is based upon the evidence presented at trial regardless of its admissibility. *See State v. Gilley*, 297 S.W.3d 739, 763 (Tenn. Crim. App. 2008). We conclude that the evidence presented at trial when viewed in the light most favorable to the State was sufficient to support Defendant's conviction.

## *II. Trial Court's Role as Thirteenth Juror*

Defendant maintains that the trial court erred in affirming the conviction as the thirteenth juror due to the trial court's inability to distinguish between the actus reus required for promoting prostitution and the actus reus required for trafficking a person for a commercial sex act.

Rule 33(d) of the Tennessee Rules of Criminal Procedure states, "The trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." This rule is the modern equivalent of the "thirteenth juror rule" and requires the trial court to weigh the evidence and grant a new trial "if the evidence preponderates against the weight of the verdict." *State v. Blanton*, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996). Our supreme court has stated that this rule "imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case[ ] and that approval by the trial judge of the jury's verdict as the thirteenth juror is a necessary prerequisite to imposition of a valid judgment." *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995). When a trial judge overrules a motion for new trial, absent any evidence that the trial court expressed dissatisfaction or disagreement with the weight of the evidence or the verdict, this court presumes that the trial judge has served as the thirteenth juror and approved the jury's verdict. *Id*. Once the trial court fulfills its duty as the thirteenth juror and imposes a judgment, appellate review is limited to determining the sufficiency of the evidence. *State v. Moats*, 906 S.W.2d 431, 435 (Tenn. 1995) (citing *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993)).

The trial court entered an order noting that the separate offenses of promoting prostitution and trafficking a person for a commercial sex act appear to have the same actus reus but that the two offenses require different mens rea in that promoting prostitution requires an intentional, knowing, or reckless mens rea while the trafficking offense requires an intentional or knowing mens rea. The trial court also found that the evidence presented at trial to support Defendant's trafficking conviction was "strong" and approved the jury's verdict as thirteenth juror.

-13-

Defendant does not cite to any authority in his brief to support his claim that the trial court's analysis of the two offenses invalidates the court's affirming the jury's verdict as thirteenth juror. *See* Tenn. R. App. 27(a)(7)(A) (requiring that the appellant's brief include citations to authorities); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Furthermore, although our supreme court has recognized that "[t]wo statutes prohibiting the same wrong and prescribing different degrees of punishment cannot exist at [the] same time," the court noted this principle's utility in analyzing whether a criminal statute is unconstitutionally vague. *State v. Welch*, 595 S.W.3d 615, 628 (Tenn. 2020) (determining that the burglary statute and the "serial shoplifter" statute prohibit different criminal activities as part of the analysis regarding the constitutionality of the burglary statute) (citations omitted). Defendant did not challenge the constitutionality of the statutory provisions relating to the trafficking of a person for a commercial sex act in the trial court or on appeal.

We conclude that the trial court fulfilled its duty as the thirteenth juror and that, therefore, our appellate review is limited to determining the sufficiency of the evidence. As previously stated, we conclude that the evidence is sufficient to support Defendant's conviction. Accordingly, Defendant is not entitled to relief regarding this issue.

### III. Denial of Motion to Dismiss Indictment

Defendant argues that the trial court erred by denying his motion to dismiss the indictment due to the grand jury foreperson's failure to sign the attestation that witnesses were sworn. The State argues that Defendant's motion to dismiss was untimely and that the trial court properly dismissed it.

Defendant orally moved to dismiss the indictment on this ground the morning of trial. The trial court did not deem the motion untimely and held a hearing. The indictment bore the name of one witness, Clay Moore, above the statement, "Were sworn before the Grand Jury to give evidence on the within indictment," followed by the date and a line for the signature of the "Foreman of the Grand Jury." That signature line was left blank. The Grand Jury foreperson's signature appeared on a line below the title "A TRUE BILL" and above a list of names of those whom the State had summoned. The trial court concluded that Defendant had failed to make an affirmative showing that the Grand Jury returned the indictment without hearing sworn witnesses.

Tennessee Code Annotated section 40-13-107 provides,

It is the duty of the foreman of the grand jury to endorse on the indictment

-14-

or, if it is a presentment, on the subpoena the names of the witnesses so sworn by the foreman and sign same officially, but the omission to endorse the names of those witnesses on the indictment or subpoena shall in no case invalidate the finding of the indictment or presentment, if the witnesses were, in point of fact, sworn by the foreman according to law.

Our supreme court has long held that this statute "is directory and not mandatory." *State v. Smith*, 369 S.W.2d 537, 538 (Tenn. 1963) (citation omitted). Thus, "[u]nless there is an affirmative showing that the Grand Jury returned the indictment without hearing witnesses," the indictment is subject to a "presumption of regularity." *Id.* at 539 (citing *Sells v. State*, 4 S.W.2d 249, 350 (Tenn. 1928)); *see State v. Mangrum*, 403 S.W.3d 152, 165 (Tenn. 2013) (noting the "presumption of regularity" accorded to grand jury proceedings).

In our view, the trial court did not err by denying Defendant's motion to dismiss the indictment. The Code explicitly states that the foreperson's failure to sign the attestation of sworn witnesses does not invalidate the indictment so long as "the witnesses were, in point of fact, sworn by the foreman." Tenn. Code Ann. § 40-13-107. Defendant bore the burden to make "an affirmative showing that the Grand Jury returned the indictment without hearing witnesses." *Smith*, 369 S.W.2d at 539. Because the omission of the foreperson's signature alone is not sufficient to invalidate the indictment, Defendant must offer proof beyond the mere omission of the signature that the Grand Jury heard no witnesses. *See id.* ("The motion to quash herein merely went to defects apparent upon the face of the indictment. No proof was produced to show that these witnesses were not sworn."). Defendant has failed to meet his burden, and the trial court did not err by denying the motion.

### IV. Testimony of Jamesena Walker

Defendant argues that the trial court erroneously permitted lay witness TBI Agent Jamesena Walker to give expert testimony. The State argues that that the trial court did not abuse its discretion and that, alternatively, any error was harmless.

"[T]he propriety, scope, manner and control of the examination of witnesses is a matter within the discretion of the trial judge, subject to appellate review for abuse of discretion." *State v. Caughron*, 855 S.W.2d 526, 540 (Tenn. 1993); *see State v. Hutchison*, 898 S.W.2d 161, 172 (Tenn. 1994); *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995); *State v. Barnard*, 899 S.W.2d 617, 624 (Tenn. Crim. App. 1994); *see also* Tenn. R. Evid. 611(a) (stating that the trial court has authority to "exercise appropriate control over the presentation of evidence and conduct of the trial when necessary to avoid

abuse by counsel"). Consequently, absent a clear abuse of discretion that results in manifest prejudice to the accused, this court will not interfere with the trial court's exercise of its discretion on matters pertaining to the examination of witnesses. *State v. Johnson*, 670 S.W.2d 634, 636 (Tenn. Crim. App. 1984).

Lay witnesses may give testimony in the form of an opinion where the testimony is "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Tenn. R. Evid. 701(a). The testimony is not objectionable merely because it embraces an ultimate issue before the jury. Tenn. R. Evid. 704. "The distinction between an expert and a non-expert witness is that a non-expert witness's testimony results from a process of reasoning familiar in everyday life and an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *State v. Newsom*, No. M2020-00681-CCA-R3-CD, 2021 WL 1753409, at *16 (Tenn. Crim. App. May 4, 2021) (citations omitted).

The State sought to certify TBI Agent Jamesena Walker as an expert witness in the field of human trafficking, but the trial court denied the motion because the State failed to give Defendant proper notice of its intent to use Agent Walker as an expert. Agent Walker testified as a lay witness. Over Defendant's objection, the trial court ruled that Agent Walker could "testify about sponsor and assistant business operations" based on her "perception . . . after a review of the text messages" and that the testimony "would be helpful to a clear understanding of the testimony, specifically a determination of fact in issue as a lay witness." On direct examination, Agent Walker testified that Defendant's language in his texts to the undercover agent was consistent with a trafficker's attempting to recruit someone into sex work, particularly his statements that the undercover agent needed a "sponsor," that he might want her to "stay around for a while," and that he would have her assist him with "day to day operations."

We conclude that the trial court did not err in admitting Agent Walker's testimony. She testified regarding her understanding of the text messages, which she viewed as Agent Simmons received them, and her testimony described her personal observations based on her experience. *See, e.g.*, *State v. Cheatham*, No. E2021-01241-CCA-R3-CD, 2023 WL 3025199, at *14 (Tenn. Crim. App. Jan. 6, 2023) (no abuse of discretion when the officer's lay testimony that the victim's injuries were not consistent with strangulation was "rationally based on her perception" and on "reasoning employed in everyday life rather than a process of reasoning familiar only by specialists in the field"), *perm. app. denied* (Tenn. June 13, 2023); *State v. Robinson*, No. M2019-00451-CCA-R3-CD, 2020 WL 4718125, at *22 (Tenn. Crim. App. Aug. 13, 2020) (no abuse of discretion when lay testimony of blood spatter was based on officer's "personal observations based upon his

experience"), *no perm. app. filed*; *State v. Williams*, 1988 WL 138843, at \*2 (Tenn. Crim. App. Dec. 30, 1988) (no abuse of discretion when the officer's lay opinion was based on "simple observation of the bullets, without further testing, and could have been made by anyone familiar with weapons"). The trial court acted within its discretion in admitting the testimony.

## IV. Testimony of Clay Moore

During TBI Agent Clay Moore's testimony on direct examination, the State asked him whether suspects who respond to a hotel room after communicating with an undercover agent posing as a minor have "any confusion regarding the age" of the person they believe they are meeting. Agent Moore responded, "No." Defendant objected on the ground that the question called for speculation as to the mindset of the suspects. The trial court sustained the objection but declined to strike Agent Moore's response, finding that the agent had not responded to the question. In denying Defendant's motion for new trial, the trial court stated that it did not hear Agent Moore's answer at trial but concluded that its mishearing did not warrant a new trial.

Defendant contends that the trial court erred by failing to strike Agent Moore's testimony and by failing to offer a curative instruction. The State argues that any error by the trial court was harmless.

Although the trial court did not hear Agent Moore's response to the question, the record reflects that Agent Moore did answer the question, and the trial court should have instructed the jury to disregard the testimony when the court sustained Defendant's objection. Nevertheless, we conclude that the error was harmless. The harmless error doctrine recognizes that the central purpose of a criminal trial is to decide factual questions of a defendant's guilt or innocence, and it promotes the public's respect for the criminal process by focusing on the underlying fairness of the trial rather than technicalities or "the virtually inevitable presence of immaterial error." *State v. Rodriguez*, 254 S.W.3d 361, 366 (Tenn. 2008). Under this analysis, a defendant must demonstrate "that the error 'more probably than not affected the judgment or would result in prejudice to the judicial process.'" *Id.* at 371-72 (quoting Tenn. R. App. P. 36(b)). When assessing the impact of a non-constitutional error, appellate courts must review the record as a whole, considering properly admitted evidence of the defendant's guilt. *Id.* at 372 (citing *State v. Gilliland*, 22 S.W.3d 266, 274 (Tenn. 2000)). "The greater the amount of evidence of guilt, the heavier the burden on the defendant to demonstrate that a non-constitutional error involving a substantial right more probably than not affected the outcome of the trial." *Id.* (citing *State v. Toliver*, 117 S.W.3d 216, 231 (Tenn. 2003); *State v. Francis*, 669 S.W.2d 85, 91 (Tenn. 1984)). Whether an error was harmless "does not turn upon the existence

of sufficient evidence to affirm a conviction or even a belief that the jury's verdict is correct." *Id*. Instead, appellate courts must determine what impact the error may have had on the jury's decision-making. *Id*.

In Defendant's interview with Agent Walker, he admitted that he believed that the person whom he was meeting at the hotel room was a sixteen-year-old girl. Whatever may be in the minds of other suspects who are targeted in sting operations was not overly prejudicial in light of Defendant's admission. Defendant has failed to establish that the trial court's error "more probably than not" affected the judgment or resulted in prejudice to the judicial process. *See* Tenn. R. App. P. 36(b). Defendant is not entitled to relief regarding this issue.

## V. Propriety of State's Closing Argument

During rebuttal closing argument, the prosecutor quoted from text messages sent by Defendant telling the undercover agent that she could make $250 to $300 per hour for sex work in Knoxville. The prosecutor then said, "Oh, by the way, why does he know the hourly rate? Anybody ever think about that?" Defense counsel objected, arguing that the prosecutor commented on Defendant's right to remain silent. The trial court overruled the objection, finding that the prosecutor's statement "fairly relates to a text message in evidence."

On appeal, Defendant argues that the State improperly commented on his electing not to testify. The State argues that the prosecutor did not comment on Defendant's decision not to testify in its closing argument. We agree with the State.

Both the United States Constitution and the Tennessee Constitution "guarantee criminal defendants the right to remain silent and the right not to testify at trial." *State v. Jackson*, 444 S.W.3d 554, 585 (Tenn. 2014). The Tennessee Supreme Court has previously cautioned that "[t]he subject of a defendant's right not to testify should be considered off limits to any conscientious prosecutor." *Id*. at 586 (quoting *State v. Hale*, 672 S.W.2d 201, 203 (Tenn. 1984)) (internal quotation marks omitted). In addition to direct comments on a defendant's decision not to testify, "indirect references on the failure to testify also can violate the Fifth Amendment privilege." *Id*. at 587 (quoting *Byrd v. Collins*, 209 F.3d 486, 533 (6th Cir. 2000)) (internal quotation marks omitted). In *Jackson*, our supreme court adopted a two-part test for determining whether a prosecutor's remark amounts to an improper comment on a defendant's constitutional right to remain silent and not testify. *Id*. at 587-88. The two-part test analyzes: "(1) whether the prosecutor's manifest intent was to comment on the defendant's right not to testify; or (2) whether the prosecutor's remark was of such a character that the jury would necessarily

have taken it to be a comment on the defendant's failure to testify." *Id*. at 588. "'[T]he question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so.'" *State v. Lockhart*, No. W2018-00051-CCA-R3-CD, 2019 WL 1753056, at *6 (Tenn. Crim. App. Apr. 17, 2019) (quoting *United States v. Sandstrom*, 594 F.3d 634, 662 (8th Cir. 2010)). This court reviews a defendant's claim of impermissible prosecutorial comment on the right not to testify de novo. *Jackson*, 444 S.W.3d at 588.

We agree with the trial court that the statement was not a comment on Defendant's failure to testify. The statement does not indicate that the prosecutor intended to comment on Defendant's election to remain silent. From the statement, it appears that the prosecutor's intent was to comment on Defendant's prior patronizing of prostitution. Although formed as a question, in our opinion, it does not rise to the level of calling on Defendant to explain himself or faulting him for failing to do so. Furthermore, the statement is not of such a character that the jury would *necessarily* have taken it as a comment on Defendant's failure to testify. The trial court did not err in overruling Defendant's objection, and Defendant is not entitled to relief regarding this issue.

## *VI. Denial of Alternative Sentencing*

Defendant argues that the trial court abused its discretion by denying him a sentence of split confinement. The State responds that the trial court properly ordered Defendant to serve his entire sentence in confinement.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any

statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103(5).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2021); *Bise*, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in *Bise* also applies to a trial court's decision to grant or deny an alternative sentence, including probation. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *Bise*, 380 S.W.3d at 708). A defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines of Tennessee Code Annotated section 40-35-102(6) provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Because trafficking a person for a commercial sex act is a Class B felony, Defendant was not a favorable candidate for an alternative sentence. *See id.* § 39-13-209(c).[3]

Defendant was eligible for probation because the sentence imposed by the trial court was less than ten years and because trafficking a person for a commercial sex act is not an offense made statutorily ineligible for probation. Tenn. Code Ann. § 40-35-303(a) (2022). Even though eligible, Defendant had the burden of establishing that he was suitable for probation and "demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

---

[3] For offenses of trafficking a person for a commercial sex act that occurred on or after July 1, 2021, a defendant is required to serve 100% of the sentence imposed by the trial court undiminished by any sentence reduction credits. Tenn. Code Ann. § 40-35-501(aa)(1), (2)(C) (2021).

Sentences involving confinement should be based on the following principles:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1).

The trial court ordered Defendant to serve his sentence in confinement, finding that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully" to Defendant. *Id*. § 40-35-103(1)(C). The record reflects that Defendant's term of supervised release as a result of his prior federal convictions had been revoked on two occasions as a result of his failure to abide by the terms of his supervised release. Thus, the record supports the trial court's findings, and the trial court did not abuse its discretion in requiring Defendant to serve his sentence in confinement.

## Conclusion

Accordingly, we affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

-21-